NOT FOR PUBLICATION                                    [Dkt. Ent. 43]

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| MADAN N. RAMCHARAN, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Civil No. 1:12-cv-07551 |
| v. | **OPINION** |
| A.F.L. QUALITY, INC., d/b/a AFL WEB PRINTING, AFL HOLDING LLC, AFL PRINTING, INC., DGF INC., AFL QUALITY NY, LLC, WESTBURY PARTNERS, and WESTBURY INVESTMENT PARTNERS, SBIC LP, | |
| Defendants. | |

**BUMB**, United States District Judge:

In this putative class action, Plaintiff, Madan N. Ramcharan ("Plaintiff"), alleges in his Amended Complaint (the "Amended Complaint") that he and approximately 250 similarly-situated employees were terminated on or about December 5, 2012 as part of mass layoffs or plant closings, without notice in violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101-2109 (the "US WARN ACT"), and the New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act, N.J.S.A. 34:21-1 (the "NJ WARN Act," and collectively, the "WARN Acts"). (Am. Compl. ¶ 24.) He brings suit against AFL Holding LLC, A.F.L. Quality, Inc. (d/b/a AFL Web Printing), AFL

1

Printing, Inc., DGF, Inc., AFL Quality NY, LLC (collectively, the "AFL Entities"), and Westbury Investment Partners SBIC, LP ("Westbury" and, together with the AFL Entities, "Defendants")[1], alleging that these Defendants, acting as a "single" or "joint employer", employed the putative class members and were responsible for their termination without notice. Default has been entered as to A.F.L. Quality, Inc. and AFL Holding LLC, and only Westbury has appeared and answered the Amended Complaint.

This matter is now before the Court upon Plaintiff's Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23. (Mot. to Certify Class ("Mot."), Dkt. Ent. 43.) For the reasons set forth herein, Plaintiff's motion shall be granted with the modifications to the class definition discussed by the Court below. However, notification of the class shall be stayed pending resolution of the issue of whether Defendant Westbury may be held liable as a joint employer under the WARN Acts.

## I. Factual Background

Plaintiff does not specifically identify his employer but rather alleges that he and the other putative class members were employed by, or reported to a facility operated by, "Defendants" at all relevant times. (Am. Compl. ¶¶ 40, 43, 55, 67.) On or

---

[1] Plaintiff has also named Westbury Partners as a defendant, but Westbury contends that no such legal entity exists. (See Opp. at 2 n.1.)

around December 5, 2012, "Defendants" carried out "mass layoffs" or "plant closings" at Defendants' facilities, whereby they terminated Plaintiff and the putative class members without cause and without 60 days' notice or any wage and fringe benefits required by the WARN Acts. (Id. at ¶¶ 24, 43, 58, 65, 67); see also 29 U.S.C. § 2102; N.J.S.A. 34:21-2.

Defendants AFL Web Printing, AFL Printing, Inc., DGF, Inc. and AFL Quality NY, LLC are subsidiaries of Defendant AFL Holding LLC, and collectively these entities were in the business of providing web printing, finishing, and circulation services for publishers and media companies. (Am. Compl. ¶¶ 1-2; Opp. at 2.) One or more of these entities operated out of plant locations in Voorhees and Secaucus, New Jersey. (Opp. at 3; Reply, Dkt. Ent. 50, at 2.) It seems that in or around December 2012, in the wake of Superstorm Sandy, the AFL Entities began liquidating their assets.[2] (Opp. at 2-3.)

The Amended Complaint alleges that Westbury is a private equity firm that acquired a majority ownership interest in the AFL Entities in June 2010. (Am. Compl. ¶ 3.) It further alleges that after acquiring this majority interest, Westbury assumed control of the business operations of the AFL Entities. (Id. at

---

[2] An involuntary petition for liquidation under Chapter 7 was filed against A.F.L. Quality, Inc. in the United States Bankruptcy Court for the District of New Jersey, Docket No. 13-bk-12921, on February 14, 2013, but was dismissed on April 3, 2013. (Am. Compl. ¶¶ 22-23.)

¶ 4.) Plaintiff asserts, <u>inter alia</u>, that Westbury and the AFL Entities shared common ownership as well as officers and directors, Westbury controlled the labor practices of the AFL Entities, and managed and oversaw the AFL Entities' operations. (<u>Id.</u> at ¶ 57.) There was a unity of personnel policies and a dependency of operations among Westbury and the AFL Entities. (<u>Id.</u>) In essence, Plaintiff maintains that Westbury is "the ultimate owner" of the AFL Entities, and authorized or controlled the decision that led to the termination of Plaintiff and the other putative class members. (<u>Id.</u> at ¶¶ 37, 41, 57.)

Westbury disputes these allegations (<u>see generally</u> Answer), contending that it acquired in 2010 a majority membership interest only in AFL Holding LLC, and that by 2012 AFL Holding LLC was one of approximately a dozen companies in its investment portfolio. (Opp. at 3.) In addition, as a creditor of AFL Holding LLC, Westbury held debt securities in AFL Holding LLC's subsidiaries. (<u>Id.</u> at 4.) However, Westbury maintains that, at no time, did it employ the putative class members or make decisions regarding their hiring, termination, or compensation. (Opp. at 3-4.)

Plaintiff now moves to certify a purported class consisting of approximately 250 other similarly situated persons (the "Class"),[3] and proposes the following definition:

> Persons who worked at or reported to Defendants' facilities including the Voorhees, New Jersey Facility, and were terminated without cause on or about December 5, 2012, within 30 days of December 5, 2012, or in anticipation of, or as the foreseeable consequence of, the mass layoff or plant closing ordered by Defendants on or about December 5, 2012, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5) and who have not filed a timely request to opt-out of the class.

(Mot. at 7.) Plaintiff contends that he is part of this class because he worked at the Voorhees, New Jersey location and was terminated without cause on or about December 5, 2012.

## II.   Standard of Review

It is a plaintiff's burden to demonstrate that a class action is a proper vehicle for a lawsuit. Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 354 (3d Cir. 2013) (citing Comcast Corp., v. Behrend, 133 S. Ct. 1426, 1432 (2013)). "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 592-93 (3d Cir. 2012) (quoting Wal-Mart Stores v. Dukes, 131 S. Ct. 2541,

---

[3] Plaintiff has provided Defendant with payroll data, obtained from Winter Harbor, LLC, which shows that, on or about December 5, 2012, at least 112 employees were terminated at an AFL facility in Voorhees, NJ and approximately 104 employees were terminated at an AFL facility in Secaucus, NJ. (Pl.'s Reply Ex. A ("Raisner Decl.") ¶¶ 4-6, Docket No. 50-1.)

2550 (2011)). In order to invoke this exception and proceed as a class action, the four requirements of Federal Rule of Civil Procedure 23(a) and the requirements of either Rule 23(b)(1), (2), or (3) must be met.

> To satisfy Rule 23(a) [:](1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy).

Marcus, at 590–91 (citing In re Cmty. Bank of N. Va., 622 F.3d 275, 291 (3d Cir. 2010)); see also Fed. R. Civ. P. 23. Moreover, Rule 23(b)(3), the basis for certification in the instant matter, "requires that (i) common questions of law or fact predominate (predominance), and (ii) the class action is the superior method for adjudication (superiority)." Id. "Class certification is only proper 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." Hydrogen Peroxide, 552 F.3d at 309 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982)). When performing this rigorous analysis, "the court cannot be bashful. It 'must resolve all factual or legal disputes touching on elements of the cause of action.'" Marcus, 687 F.3d at 591 (quoting Hydrogen Peroxide, 552 F.3d at 307). And,

6

"[f]requently, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. '[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" Dukes, 131 S. Ct. at 2551-52 (alteration in original) (quoting Falcon, 457 U.S. at 160). In addition, "[f]actual determinations supporting Rule 23 findings must be made by a preponderance of the evidence, and the burden of proof rests on the movant." Hayes, 725 F.3d at 354 (internal quotations and citations omitted).

Before even considering the requirements of Rule 23(a) and Rule 23(b), however, it is "an essential prerequisite" to class certification for the plaintiffs to show by a preponderance of the evidence that the proposed class is "currently and readily ascertainable based on objective criteria." Marcus, 687 F.3d at 592-93. The same rigorous analysis standards that apply to Rule 23 findings apply to the question of ascertainability.[4] Carrera,

---

[4] Ascertainability plays a key role in a Rule 23(b)(3) class action:

> First, at the commencement of a class action, ascertainability and a clear class definition allow potential class members to identify themselves for purposes of opting out of a class. Second, it ensures that a defendant's rights are protected by the class action mechanism. Third, it ensures that the parties can identify class members in a manner consistent with the efficiencies of a class action.

Carrera v. Bayer Corp., 727 F.3d 300, 307 (3d Cir. 2013).

727 F.3d at 306. "A Plaintiff may not merely propose a method of ascertaining a class without evidentiary support that the method will be successful." Id. If the Court cannot ascertain the class in an economical and administratively feasible manner, the "significant benefits of a class action are lost." Id. at 307. In other words, "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." Marcus, 687 F.3d at 593. Moreover, "[s]ome courts have held that where nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails." Id.

As put plainly by the Third Circuit: "Th[e] petition for class certification will founder if the only proof of class membership is the say-so of putative class members or if ascertaining the class requires extensive and individualized fact-finding." Hayes, 725 F.3d 356 (internal citations omitted). "In sum, to satisfy ascertainability as it relates to proof of class membership, the plaintiff must demonstrate his purported method for ascertaining class members is reliable and administratively feasible, and permits a defendant to challenge the evidence used to prove class membership." Carrera, 727 F.3d at 308.

**III.  Analysis**

8

The WARN Acts are designed to "protect[] work and communities by requiring employers to provide notice of plant closings and mass layoffs." The WARN Act requires, with some exceptions, that an employer provide affected employees with 60 days' written notice prior to a "plant closing" or "mass layoff." 29 U.S.C.A. § 2102(a). The WARN Act specifically contemplates class actions brought on behalf of similarly-situated employees, and courts frequently grant certification in such actions. See, e.g., 29 U.S.C.A. § 2104; In re:A-P-A Transport Corp. Consol. Litig., No. 02-3480, 2005 WL 3077916 (D.N.J. Nov. 16, 2005).[5] The NJ WARN Act, modeled on its federal counterpart, similarly requires that, under certain conditions, employers must provide employees with 60 days' notice or, alternatively, severance pay, in the event of a transfer or termination of operations or a mass layoff. N.J.S.A. 34:21-2; see also DeRosa v. Accredited Home Lenders, Inc., 22 A.3d 27, 36 (N.J. Super. App. Div. 2011). Because of the similarities in the statutes, New Jersey courts look to case law construing the WARN Act for guidance in interpreting the NJ WARN Act. See DeRosa, 22 A.3d at 36.

---

[5] See also In re Spring Ford Indus., Inc., No. 02-15015, 2004 WL 231010, at *6 (Bankr. E.D. Pa. Jan. 20, 2004) ("I would agree, at least with respect to the numerosity requirement, that '[t]he WARN Act seems particularly amenable to class litigation' given that its applicability is limited to companies which employ more than 100 employees and which lay off employees in groups of 50 or more." (citations omitted)).

As an initial matter, Defendant challenged Plaintiff's proposed class definition on two grounds. First, Westbury argues that the class definition is overbroad in that it fails to limit the putative class to those who failed to receive the requisite statutory notice of termination. Westbury thus proposes that the class definition include language to the effect of "who were not given sixty (60) days prior notice of termination." (Opp. at 13 (citing In re ABMD Ltd., 439 B.R. 475, 482-83 (S.D. Ohio 2010).) As Plaintiff is neutral regarding this change (Reply at 7), the Court will modify the definition to this effect. Second, Westbury argues that Plaintiff presented no evidence justifying the inclusion of class members employed at other unnamed and unidentified "facilities." In response, Plaintiff acknowledged that there were only two facilities, located in Voorhees and Secaucus, New Jersey. (Reply at 2.) Accordingly, the Court will also modify the proposed class definition to account for this fact. With these changes in mind, the Court now turns to the remaining arguments.

### a. Ascertainability

Westbury argues that Plaintiff has failed to provide a reliable method for ascertaining the putative class members. To satisfy the ascertainability prerequisite, Plaintiff must show by a preponderance of the evidence that the putative class is "currently and readily ascertainable based on objective

criteria." <u>Haskins</u>, 2014 WL 294654, at *5 (D.N.J. Jan. 27, 2014)
(citation omitted). Additionally, Plaintiff must demonstrate
that the method for ascertaining the class members is "reliable
and administratively feasible, and permits [the] defendant to
challenge the evidence used to prove class membership." <u>Carrera</u>,
727 F.3d at 308.

Plaintiff contends that the putative class members may be
determined through ADP payroll records reflecting who was
employed during the relevant time period. Plaintiff's counsel
submitted a declaration in support of its Motion attesting to
the receipt of ADP payroll records reflecting earnings and other
information for Defendants' employees for the period ending
December 2012. (Declaration of Jack A. Raisner ("Raisner
Decl."), Dkt. Ent. 50-1, at ¶ 2.) Although Plaintiff
inexplicably did not provide these records to the Court,
choosing instead to rely upon counsel's certification, Plaintiff
did provide them to Westbury. (<u>See</u> <u>id.</u> at ¶ 2.) According to
counsel:

> 4. The records appear to show that at the Voorhees
> facility, a total of 138 employees were on the payroll
> in September 2012, of whom eight were terminated in
> October and 18 were terminated [in] November. Thus, at
> least, 112 employees were subject to termination in
> December.
>
> 5. With respect to the Secaucus facility, the ADP
> records appear to show a total of 110 employees were
> on the payroll in September 2012, of whom six were

11

> terminated in November. Thus, 104 employees were
> subject to termination in December.
>
> 6. Upon information and belief, substantially all of
> the employees who remained in December were terminated
> on or about December 5, 2012.

(Id. at ¶¶ 4-6.) While Plaintiff concedes that Westbury does not

appear on the payroll stubs for any employees, Plaintiff's

counsel contends that all of the employees were "nominally"

employed by one of the AFL Entities, which operated as

integrated entities under the decision-making authority of

Westbury Partners.

The payroll data thus sufficiently demonstrates at this

stage the potential employment by Defendants collectively of 100

or more employees[6] at each of two locations. (See Opp. at 5-9.)

Moreover, the data permits the putative class members to be

objectively ascertained by providing evidence of who was

employed by Defendants as of the relevant date. Payroll data is

also generally a reliable record of employment given the obvious

importance of maintaining accurate payroll information.

Accordingly, the Court finds that Plaintiff has narrowly met its

---

[6] Under the NJ WARN Act, an "employer" is defined as "an
individual or private business entity which employs the
workforce at an establishment." N.J.S.A. 34:21-1. Under the US
WARN Act, an "employer" is defined as "any business enterprise
that employs--(A) 100 or more employees, excluding part-time
employees; or (B) 100 or more employees who in the aggregate
work at least 4,000 hours per week (exclusive of hours of
overtime)." 29 U.S.C. § 2101(a)(1)(A)-(B).

burden of demonstrating that the class is ascertainable based upon the available payroll data.

### b. Rule 23(a)

To receive class certification, Plaintiff must also show by a preponderance of the evidence that each of the prerequisites for class certification set forth in Rule 23(a) are satisfied. See Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 248 (3d Cir. 1974). These requirements are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.

### i.   Numerosity

In order to demonstrate numerosity, Plaintiff must show that the putative "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability of joinder does not only relate to the sheer number of class members, but also the impracticability of plaintiffs filing suit when the individual stakes in the action are relatively small." In re Paulsboro Derailment Cases, No. 13-784, 2014 WL 1371712, at *6 (D.N.J. April 8, 2014) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 616 (1997)). Although no numeric threshold for numerosity has been established, the Third Circuit has stated that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been

met." <u>Stewart v. Abraham</u>, 275 F.3d 220, 226-27 (3d Cir. 2001)

(citation omitted). To the extent Westbury argues that it cannot

be determined who employed these individuals and thus the size

of the putative class, the Court finds that these concerns are

allayed by the payroll data Plaintiff has now provided to

Westbury. As noted above, according to Plaintiff's counsel's

declaration, the payroll records show that each of Defendants'

facilities employed, and then terminated without cause, over 100

employees as of the relevant date. (Raisner Decl. ¶¶ 4-6.)

Because joinder of all 200 or more former employees would be

impracticable, the Court finds that the numerosity requirement

is met. <u>See Stewart</u>, 275 F.3d at 227; <u>see also</u> <u>In re A-P-A</u>

<u>Transp. Corp. Consol. Litig.</u>, No. 02-3480 WGB, 2005 WL 3077916

*5 (D.N.J. Nov. 16, 2005); <u>In re Spring Ford Indus., Inc.</u>, No.

02-15015, 2004 WL 231010, at *6 (Bankr. E.D. Pa. Jan. 20, 2004)

(noting "[t]he WARN Act seems particularly amenable to class

litigation," and finding numerosity met for alleged class of

150-270 terminated employees) (citations omitted); <u>In re Kaiser</u>

<u>Group Int'l, Inc.</u>, 278 B.R. 58, 64 (Bankr. D. Del. 2002)

(certifying class of 47 members).[7]

---

[7] Defendant cites <u>Austen v. Catterton Partners V, LP</u>, 268 F.R.D.
146, 147 (D. Conn. 2010), but that case is distinguishable. In
<u>Austen</u>, the court found that there was not enough information to
certify the putative class without discovery when the plaintiff
was attempting to apply the WARN Act to approximately 300 remote
employees. 268 F.R.D. at 147. However, the employees in <u>Austen</u>

### ii.  Commonality

Second, Plaintiff must demonstrate that "there are
questions of law or fact common to the class." Fed. R. Civ. P.
23(a)(2). The commonality requirement is "easily met," see Baby
Neal for & by Kanter v. Casey, 43 F.3d 48, 56 (3d Cir. 1994),
and "does not require an identity of claims or facts among class
members," Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 184
(3d Cir. 2001). Here, Plaintiff contends that he and the other
putative class members were terminated as part of a common plan
stemming from Defendants' decision to terminate the employees at
the Secaucus and Voorhees facilities. The liability
determination will necessarily entail consideration of the
following common issues:

1) Whether Defendants employed more than 100 employees;
2) Whether the class members are protected by the WARN Act;
3) Whether the class members were Defendants' employees;
4) Whether Defendants discharged the class members on or
   within 30 days of December 5, 2012, and thereafter in
   connection with a mass layoff or plant closing;
5) Whether the class members were "affected employees;"
6) Whether the class members were terminated without cause;
7) Whether the class members were terminated without 60
   days' advance notice;
8) Whether Defendants acted as a single employer regarding
   the decision to terminate the class members' employment;
   and
9) Whether Defendants failed to pay the class members' 60
   days' wages and benefits.

---

worked from tiny depots across the United States. Id. Here, the
payroll records purportedly reflect that the minimum number of
employees were employed at one of only two locations and thus
this case does not present an issue of remote employees.

Westbury does not appear to contest that any of these issues are common to the class members, and thus the Court finds that Plaintiff has met this test. See In re A-P-A Transp. Corp. Consol. Litig., No. 02-3480 WGB, 2005 WL 3077916, at *5 (D.N.J. Nov. 16, 2005).

### iii. Typicality

Third, Plaintiff must show "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In other words, the Court must determine if the named plaintiff's incentives align with those of absent class members such that the absentees' interests will be fairly represented. In re A-P-A Transp. Corp. Consol. Litig., 2005 WL 3077916, at *4 (citing Baby Neal, 43 F.3d at 57); Beck v. Maximus, Inc., 457 F.3d 291, 295-296 (3d Cir. 2006). A claim is not atypical if there are some factual differences, as long as the "claim arises from the same event . . . that gives rise to the claims of the class members, and . . . is based on the same legal theory." Beck, 457 F.3d at 295-96 (quoting Baby Neal, 43 F.3d at 55).

Here, Plaintiff asserts claims under the WARN Acts and bases his allegations on a single set of operative facts – the December 5, 2012 terminations of Defendants' employees. Plaintiff claims that neither he nor any of the putative class members received 60 days' advanced notice of the terminations or

16

wages and benefits to which they were entitled as a result of
the layoffs. Plaintiff further contends that he has no conflicts
of interest with any other class members and that the
circumstances of his termination are the same as those of the
other former employees terminated at approximately the same
time. (See Pl.'s Mem., Ex. A ¶ 9.)

Westbury challenges Plaintiff's ability to represent former
employees who worked at or reported to a different location from
Plaintiff. Although Westbury identified no potential conflicts,
and the Court can think of none on the current record, the
dearth of evidence concerning Defendants' structure and
operations at either location gives the Court pause. However,
Plaintiff has offered, in the event that a conflict arises, to
join another class representative who worked in the Secaucus
facility. (Reply at 3 & Ex. B.) That individual has declared his
willingness to represent other former employees at the Secaucus
location who were terminated on or about December 5, 2012.
Accordingly, the Court is satisfied that Plaintiff has met its
burden of demonstrating typicality. See In re:A-P-A Transport
Corp. Consol. Litig., 2005 WL 3077916, at *4; In re Spring Ford
Indus., Inc., 2004 WL 231010, at *6.

### iv.   Fair and Adequate Representation

Lastly, Plaintiff must establish adequacy of representation
by proving that "the representative parties will fairly and

adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representative are experienced and qualified to prosecute the claims on behalf of the entire class." Beck, 457 F.3d at 296. Defendant again questions the adequacy of Plaintiff's representation of a class of former employees who worked at or reported to a different facility than Plaintiff. As discussed above, however, Westbury identifies no factual circumstances surrounding the Secaucus employees' termination that would render Plaintiff unable to fairly and adequately represent them. See In re:A-P-A Transport Corp. Consol. Litig., 2005 WL 3077916, at *5 ("It is the defendants' burden to show the inadequacy of plaintiff's class representation." (citation omitted)). Moreover, in the event that a conflict arises, a former employee of the Secaucus location stands ready to represent his fellow employees.

With regard to the adequacy of proposed class counsel, the Court finds that Plaintiff has demonstrated counsel is capable of representing the class. Plaintiff's counsel are co-chairs of the WARN Act Practice Group at Outten & Golden LLP, a law firm involved in over 75 WARN certified or putative class actions

18

currently in litigation or settled.[8] (Declaration of René S.
Roupinian ("Roupinian Decl.") ¶ 15.) In addition, Plaintiff's
counsel has been involved in the investigation and prosecution
of this matter since its commencement, and thus the Court finds
that Plaintiff's counsel can adequately represent the putative
class.

### c. Rule 23(b)(3)

In addition to satisfying the requirements of Rule 23(a),
Plaintiff must meet the requirements of Rule 23(b)(3), which
requires "the questions of law or fact common to the members of
the class predominate over any questions affecting only
individual members, and that a class action is superior to other
available methods for fairly and efficiently adjudicating the
controversy." Fed. R. Civ. P. 23(b)(3). There are four factors
used in determining whether both elements of Rule 23(b) are
satisfied:

> (A) the class members' interest in individually
> controlling the prosecution or defense of separate
> actions; (B) the extent and nature of any litigation
> concerning the controversy already begun by or against
> class members; (C) the desirability or undesirability
> of concentrating the litigation of the claims in the

---

[8] Counsel named many of these cases in her certification, but
several of them appear to be duplicated. (See, e.g., Roupinian
Decl. ¶ 15 (citing Schuman v. The Connaught Grp. Ltd., No. 12-
10512 (SMB) (Bankr. S.D.N.Y April 16, 2013); Schuman v. The
Connaught Grp. Ltd., No. 12-01051 (Bankr. S.D.N.Y. 2012); Austen
v. Archway Cookies, No. 08-12323 (Bankr. D. Del. 2008); Austen
v. Archway Cookies, No. 08-51530 (Bankr. D. Del. 2008)).)

particular forum; and (D) the likely difficulties in managing a class action.

Id. "In the context of alleged WARN Act violations, common issues will almost always predominate. After all, liability depends upon a single employer terminating large groups of employees." In re Spring Ford Indus., Inc., 2004 WL 231010, at *8. Indeed, the class members' claims are based on the same set of facts and proceed on a single theory of liability. Thus no individual plaintiff has an interest in controlling the prosecution of the claims. As to the second factor, this Court has not been made aware of any other lawsuits initiated by any class members involving the present matter. Third, concentrating the WARN Acts claims of the putative class members in a single class action will avoid the wasteful duplication that would result from multiple suits. Moreover, the interests of the class members are best served through a class action lawsuit because many of the claims are small, making individual lawsuits impracticable. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985). Lastly, neither party has identified any difficulties in litigating this matter as a class action. Thus, this Court finds that the requirements of Rule 23(b)(3) have been met.

For the foregoing reasons, this Court grants Plaintiff's motion for class certification with the modifications to the class definition addressed above. The class definition shall be:

> Persons who worked at or reported to Defendants' facilities located in Voorhees, New Jersey, and Secaucus, New Jersey, and were terminated without cause, and without receiving sixty (60) days' prior notice as required by the WARN Act, on or about December 5, 2012, within 30 days of December 5, 2012, or in anticipation of, or as the foreseeable consequence of, the mass layoff or plant closing ordered by Defendants on or about December 5, 2012, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5) and who have not filed a timely request to opt-out of the class.

### d. Stay Notification

As mentioned <u>supra</u>, Plaintiff here attempts to hold all of the AFL Entities, as well as Westbury, liable under a "single employer" theory. Although the Court finds that Plaintiff has narrowly met its burden of demonstrating that class certification is appropriate at this time, the Court will stay notification of the class in light of the serious questions regarding whether Westbury, the only Defendant that has appeared in this action, may be held liable as a "single employer."

Under the single employer doctrine, "independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as part of the parent or contracting company depending upon the degree of their independence from the parent." <u>Pearson v. Component Tech. Corp.</u>, 247 F.3d 471, 483 (3d Cir. 2001) (concluding that

21

"evidence proffered by the plaintiffs simply [did] not establish the high degree of integration required" to survive summary judgment). The Third Circuit employs a non-exclusive, multi-factor test based upon a Department of Labor regulation that considers: common ownership, common directors and/or officers, de facto exercise of control, unity of personnel policies from a common source, and dependency of operations. Id. at 495 (citing 20 C.F.R. § 639.3(a)(3)). This test applies to the determination of lender liability as well as parental liability. Id. at 494-95.

At this stage, Plaintiff's contention that Westbury did not operate an arms' length relationship with the AFL Entities such that Westbury should be held liable as a single employer appears to be based primarily upon the allegations that the President and Chief Operating Officer of Westbury was appointed to the board of directors and participated in hiring one or more of the other directors during late 2012, and that the AFL Entities had overlapping board membership.[9] (See, e.g., Am. Compl. ¶¶ 6-19.) However, under Third Circuit jurisprudence, "common ownership and common directors and/or officers, are not sufficient to establish that two entities are a single employer." In re APA

---

[9] Plaintiff also conclusorily asserts that Westbury exercised control over the AFL Entities' labor practices and controlled the decisions resulting in the termination of Plaintiff and the other class members. (Am. Compl. ¶ 57.)

Transport Corp. Consol. Litig., 541 F.3d 233, 243 (3d Cir.

2008). Moreover, other courts addressing lender liability for

WARN violations have recognized that lenders or private equity

funds can be liable for WARN violations in only limited

circumstances. See, e.g., Guippone v. BH S&B Holds. LLC, 737

F.3d 221, 226 (2d Cir. 2013) (lender liable only where it

"becomes so entangled . . . that it has assumed responsibility

for the overall management of the borrower's business").[10]

Although the Court recognizes that whether or not an

affiliated entity may be held liable as a single employer is

largely a fact-driven inquiry appropriate for resolution only

after the completion of discovery,[11] this issue has significant

---

[10] Westbury also disputes Plaintiff's allegations concerning the
overlap between it and the AFL Entities. It further argues that
it had separate officers and directors, did not control day-to-
day affairs, had separate human resources personnel, policies,
and procedures, and was not involved in decisions about hiring,
terminating, or compensating any employees of the AFL Entities.
(Opp. at 16.)

[11] See In re Taylor Bean & Whitaker Mortgage Corp., 3:09-BK-
07047-JAF, 2010 WL 4025873 at *4 (Bankr. M.D. Fla. Sept. 27,
2010) (refusing to consider arguments concerning possible sites
with less than 50 employees, which go solely to the merits and
are inappropriate at class certification); Hiles v. Inoveris,
LLC, 2009 WL 3671007 at *2 (S.D. Ohio Nov. 4, 2009) ("[T]he
question of whether [a parent company] exercised a degree of
control over [its subsidiary] justifying [a] Court's holding it
accountable as the Plaintiffs' de facto employer is a fact-
sensitive question which . . . should not be answered until the
Plaintiffs have had some opportunity to conduct discovery on
this matter." (quoting Bledsoe v. Emery Worldwide Airlines,
Inc., 258 F.Supp. 2d 780, 787 (S.D. Ohio. 2009)); Local 396,
Int'l Union v. Midwest Fasteners, 779 F. Supp. 788, 792 (D.N.J.
1992) (noting that, on motion for summary judgment, "the court

23

implications for Plaintiff's motion to certify the class. The Supreme Court has noted that the "rigorous analysis" of class certification "[f]requently . . . entails some overlap with the merits of the plaintiff's underlying claim," which "cannot be helped." Dukes, 131 S. Ct. at 2551–52 (alteration in original) (quoting Falcon, 457 U.S. at 160). However, the Supreme Court has also noted previously that the merits of a case should not be of primary consideration when weighing class certification. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."). While consideration of the merits of Plaintiff's "single employer" theory of liability does not render certification of the putative class inappropriate at this juncture, it does call into question the wisdom of notifying the class.

The Court is persuaded by the reasoning of the court in Guippone v. BH S&B Holdings LLC, No. 09-1029, 2011 WL 1345041 (S.D.N.Y. March 30, 2011). There, the court conditionally certified a class of former employees seeking to impose WARN Act

---

is undertaking a fact-specific inquiry whereby the court must determine from a multiplicity of criteria whether the operations of the parent and subsidiary are so interrelated as to hold the parent liable for the violation of the WARN Act by the subsidiary").

24

liability on HoldCo, which owned the parent company that, in
turn, owned the employer. 2011 WL 1345041, at *8. As Holdco
intended to file (and ultimately did file) a summary judgment
motion addressing single employer liability, the court
determined that it would not force HoldCo to incur any expense
related to class certification until such time as it determined
the matter would proceed to trial.[12] Id.

Likewise, this Court is disinclined to force Westbury to
incur any expenses or burdens associated with class
certification and notification where it seems questionable that
the class members will prevail against Westbury. Moreover, in
light of the legitimate concerns regarding plaintiff's ability
to hold Westbury liable and the failure of the other Defendants
to appear, staying notification will avoid the pitfalls of
providing class members with false hopes of recovery. As the
Court can discern no prejudice to either party due to a delay in
notification, the Court finds that the more prudent course of
action is to follow the district court's approach in Guippone

---

[12] The district court subsequently granted summary judgment in
favor of HoldCo, finding that plaintiff failed to raise a
triable question of fact that would permit a jury to find that
HoldCo could be held liable as a single employer under the WARN
Act. See Guippone v. BH S&B holdings LLC, 737 F.3d 221, 224-25
(2d Cir. 2013). The Second Circuit reversed, finding sufficient
evidence that raised a question of fact as to whether HoldCo
exercised de facto control over Holdings. Id. at 227-28.

and stay class notification until after the single employer
issue is adjudicated on summary judgment.

As to the form of the notice to be given if or when the
Court so orders, notice shall be given by first class mail,
postage prepaid, to each class member at the member's last known
address as shown in Defendants' payroll records. Plaintiff's
proposed form of notice is sufficient in that it states the
nature of the action, the class claims, issues or defenses, that
a class member may enter an appearance through counsel if
desired, that the court will exclude those members who elect to
opt-out of the class, the opt-out procedures required, and
notice that any class members who do not opt-out will be bound
by the judgment. See Fed. R. Civ. P. 23(c)(2)(B). The class
definition must be amended in accordance with the definition set
forth above.

## IV.    Conclusion

For the reasons set forth above, this Court finds that
Plaintiff has satisfied the requirements of Rule 23 and thus,
grants certification of the with the modifications discussed
herein. However, notification of the Class shall be stayed
pending resolution of the issue of whether Westbury may be held
liable as single employer.

Date: <u>September 5, 2014</u>

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE